PEOPLE ex rel. SMITH v. CLARKE, Mayor, et al.

(Supreme Court, Appellate Division, Second Department. January 23, 1903.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—PRINTING—VALIDITY.

Where a city council fixed the price for publishing legal notices for the ensuing year at 50 cents per folio, as authorized by the charter, and designated relator's paper as an official newspaper, provided he should agree to make publications at the fees fixed, and relator's newspaper was thereafter designated as an official paper, and notices of tax sales for the ensuing year were published therein, the city council had no power to agree to pay or allow relator's claim for such publications at a rate exceeding that fixed.

2. SAME—CUSTOM.

Where a city fixed the rate to be paid for publishing legal notices for the ensuing year, as authorized by its charter, the fact that an increased rate charged by a publisher for such notices was the customary rate established by a long course of dealing before the passage of the charter did not justify the allowance of such increased rate.

3. SAME—AUDIT OF CLAIMS—EFFECT.

Where a city council had fixed the price to be paid for publication of legal notices, as authorized by the city charter, the fact that the council subsequently allowed the claim of a publisher at an increased rate, and audited his claim therefor, did not preclude the city from subsequently refusing to pay the claim as audited.

4. MANDAMUS—AUDIT OF CLAIM—COLLATERAL ATTACK.

Where a city council illegally audited the claim of a publisher for publishing legal notices at a rate exceeding that fixed by the council, the return of the comptroller of the city to a writ of mandamus to compel the payment of the claim as audited, alleging that such audit was ultra vires and void, was a direct, and not a collateral, attack on the audit of the claim.

Appeal from special term, Kings county.

Mandamus by the people of the state of New York, on the relation of James H. Smith, against Henry S. Clarke, as mayor of the city of New Rochelle, and others, to compel the issuance and payment of a warrant for printing. From an order granting a peremptory writ, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Hugh M. Harmer, for appellants.

Michael J. Tierney, for respondent.

GOODRICH, P. J.   The appeal is by the defendants from an order at special term granting a peremptory writ of mandamus requiring the defendant Clarke, as mayor, and the defendant Kammermeyer, as city clerk, of the city of New Rochelle, to draw and countersign a warrant in favor of the relator, and upon the defendant Harmer, as city treasurer, for the sum of $654.15, stating the fund upon which it is to be drawn, and requiring the defendant Chamberlain, as comptroller, on presentation, to countersign such warrant, and the defendant Harmer to pay the same from the city treasury, in payment of an account of the relator for publishing in his newspaper, the New Rochelle Press, notices of sales of land for unpaid taxes.

Section 62 of the charter of the city, being chapter 128 of the Laws of 1899, provides that the common council, at its first meeting in each official year, shall fix and determine the legal fee per folio at which all notices directed by the common council to be published shall be published by the official newspapers, which are to be designated as such, "provided said newspapers shall agree to and with said common council to make the aforesaid publication at the fees prescribed by the common council." In pursuance of this section, the common council, in February, 1901, passed a resolution that the legal fee at which such notices should be published "is fixed and determined at the sum or price of fifty cents per folio for each and every insertion," and designating the Press as one of the official newspapers, "provided said newspapers shall agree to and with the common council of the city of New Rochelle to make the aforesaid publications at the fees hereinbefore prescribed, fixed, and determined." The relator's newspaper was duly designated as one of the official journals of the city, and by direction of the common council published the notices of tax sales in question in 1901. On December 17, 1901, the relator presented his claim for audit to the common council, which referred the same to the standing committee of audit required to be appointed under section 56 of the charter. The committee reported its audit and allowance at the sum named. The relator demanded of the proper officers a warrant, which, however, was not issued. In February, 1902, a new committee of audit having been appointed, the relator's bill was referred to, and examined and approved by, such committee, and the common council passed a resolution authorizing the mayor and city clerk to draw drafts upon the city treasurer in payment of the relator's bill. The relator demanded compliance with the resolution, but did not secure the same, although there were applicable funds in the city treas-

ury. Thereafter the charter was amended by chapter 288 of the Laws of 1902, which took effect in April, 1902. This act created the office of comptroller, and abolished the committee of the common council on auditing accounts, vesting its powers in the comptroller. It provided that:

"All bills or claims that have been presented against the city to the common council or any department or any office thereof shall before action thereon be referred to the comptroller for examination and report."

It is contended by the relator that, as his bill was audited by the committee of audit and authorized by the common council to be paid prior to the creation of the office of comptroller, he is entitled to be paid without intervention of the comptroller. The defendants contend that the city is not bound by such previous action of the common council; that the original charter authorized the common council to fix and establish each year the legal fee per folio at which all official notices should be published; that the common council, in February, 1901, fixed the rate at 50 cents per folio; that there was no power in the common council or any committee to bind the city for any greater rate; that the relator's compensation under the ordinance was only $388; that the city was willing to pay that amount; and that the comptroller had power, before action, to examine and report upon this claim. Our decision must rest upon one of these differing contentions.

It is clear that the common council and its committee had no legal authority to audit and direct the payment of the claim at other than the established rate of 50 cents per folio, according to the ordinance of the common council. For the ordinance had the effect of a law, and we must assume that it was known to the relator, and that, before the Press became one of the official newspapers of the city, it agreed with the common council to make the publications at the rate prescribed in the resolution of the common council. Otherwise, it was not one of the official newspapers in which notices were to be published. The audit and direction were therefore illegal, and did not bind the city, and payment of the excess could not have been enforced. If there had been an actual question as to the amount of service rendered by the relator, an audit would have been conclusive upon that question; but it would not be conclusive as to fraud or collusion in the making of the contract, nor upon the question whether the audit of the committee and the resolution of the common council were within the boundaries of their power as prescribed by law.

In Osterhoudt v. Rigney, 98 N. Y. 222, it was held that the general rule was that the acts of a board of audit within its jurisdiction, in the absence of fraud or collusion, are final and conclusive, and cannot be questioned in a collateral proceeding. "But," said the court (Judge Andrews writing), "boards of audit, in allowing accounts, are limited to the powers conferred upon them by the statute, and, when they transgress their limitations, their acts, like those of any other tribunal of limited jurisdiction, are void."

So in Nelson v. City of New York, 131 N. Y. 4, 29 N. E. 814, it was contended that an audit was conclusive as a judgment, and the court (Chief Judge Earl writing) said (page 16, 131 N. Y., and page 817, 29 N. E.):

"But can a mere audit by a board simply clothed with the power to audit have such conclusive effect? Our attention is called to no authority giving the audit such effect, and we are confident there is none. The law of 1872 provides for nothing akin to a regular judicial proceeding. It does not provide for the examination of witnesses, and there is none of the ordinary machinery of a court of justice. To give to the audit of such a board the far-reaching effect of a regular judgment would be both novel and mischievous. Such an audit, when the auditors are not fraudulently imposed on and act within their jurisdiction, is undoubtedly conclusive, until in some way reversed, as to the liability of the city for the amount audited, and it cannot be collaterally overhauled or attacked. But it is conclusive for nothing more, and this is true of every audit made by county supervisors and town boards of auditors."

The question naturally arises whether the committee and the common council were acting within the boundaries of their power. Section 62 of the charter provided that it should fix and determine the "legal fee per folio," and the common council fixed and determined it at 50 cents per folio. This was the only contract which the city and the relator could make for the publication. This became the prescribed boundary of official power, which the parties could not legally pass. Any contract for a larger rate per folio was illegal and void. It is not necessary to say that the contract was obtained by fraud or collusion. The relator asserts that the increased rate had been established by a long course of dealing, running over a period of many years. The effect of any custom which may have existed before the passage of the charter in 1899 was certainly removed by its plain provisions. The audit and allowance of the relator's claim at any sum above 50 cents per folio was illegal, and the city is not concluded by the audit or allowance.

The relator also contends that the audit cannot be attacked collaterally. I am of opinion that this is not a collateral attack upon the audit. The writ is to compel the city officials to pay the relator's claim, and its allowance is based upon an audit, which was ultra vires of the common council. The return of the comptroller sets out section 62 of the charter and the resolution of the common council thereunder, and these establish conclusively that the audit and allowance were illegal. This proceeding affords a direct, and not a collateral, attack upon the audit, and consequently we may review the legality of the relator's claim herein.

The order should be reversed.

Order reversed, and writ dismissed, with $10 costs and disbursements. All concur.