### PEOPLE v. JOURNAL CO.

(Supreme Court, Trial Term, Albany County. March 5, 1913.)

1. STATES (§ 187*)—STATE PRINTING CONTRACTS—AMOUNT OF COMPENSATION—OVERPAYMENT.

Executive Law, § 73, as added by Laws 1893, c. 248, § 2, requires the Secretary of State, Comptroller, and Treasurer to designate a daily newspaper published in Albany as a state paper, in which shall be published the state laws. Defendant newspaper was designated as state paper for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the city of Albany, and was also designated by the board of supervisors as the county paper for the publication of the Session Laws, and was paid 75 cents a folio as a state paper for publishing the state laws and 30 cents a folio for publishing the Session Laws as a county paper. Only one publication of the laws was made which was claimed to be both as a state and county paper, bills were presented to the Secretary of State for payment at the above rates, and he certified the publication, and the Comptroller examined the bills, and made an award for the amount, and drew a draft upon the State Treasurer, who certified that the state treasury owed defendant such amount for services rendered in publishing the state laws of the state as a state and county paper. It had been the custom for years to designate the same paper as both the state and county paper, and pay it the amount mentioned, though there was no separate publication of the laws as a state and county paper. *Held*, that the state could not recover the amount paid to defendant as a county paper for publishing the Session Laws, since, in absence of fraud, there was a legal audit of the claim.

[Ed. Note.—For other cases, see States, Cent. Dig. § 177; Dec. Dig. § 187.*]

2. NEWSPAPERS (§ 1*)—PUBLICATION OF STATE LAWS.

One newspaper may be designated both as a state and as a county paper.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 1–13; Dec. Dig. § 1.*]

3. STATES (§ 185*)—PUBLIC PRINTING—AUDITING OF CLAIM.

The auditing of a bill for the publication of state and Session Laws by a state and county paper by the proper state officers authorized to make the award was a judicial act, and would be valid if the claim was legally chargeable against the state, but they would have no power to allow a claim not legally chargeable against the state.

[Ed. Note.—For other cases, see States, Cent. Dig. § 176; Dec. Dig. § 185.*]

Action by the People of the State of New York against the Journal Company.　Complaint dismissed.

Thomas Carmody, Atty. Gen., by Deputy Atty. Gen. J. A. Kellogg, and Edward J. Mone, of Albany, for the People.

J. S. Frost and A. J. Nellis, both of Albany, for defendant.

RUDD, J.　The defendant is the publisher of the Albany Evening Journal, which newspaper was designated for the years 1895 to 1906, both inclusive, as a state paper for the publication of the laws of the state of New York, as provided by chapter 248 of the Laws of 1893 and amendments thereto, and it was also designated by the board of supervisors of the county of Albany under the law as a county paper for the publication of the Session Laws, as provided by chapter 686 of the Laws of 1892 and amendments thereto.

Under such designation the Journal published the laws of the state of New York as a state newspaper and as a county paper by inserting and printing each one of the laws of the state of New York once.

The legal compensation to a state paper for the publication as required by law was at the rate of 75 cents per folio. The legal rate for the publication required in the county paper was 30 cents per folio. Bills were presented by the defendant for the publication in the state

paper and the county paper, respectively, of the laws required in each case to be published, to the proper state authorities, which bills were allowed, the same having been certified by the Secretary of State and passed by the Comptroller of the state. The bills thus allowed for the 12 years from 1895 to 1906, both inclusive, aggregated $12,497.10. These amounts were paid by the Treasurer of the state.

This action is brought to recover the amount paid to the plaintiff by the state of New York, through its Treasurer under the certificate of the Secretary of State, upon the audit of the Comptroller, for the publication in the Albany Evening Journal of the Session Laws as a county paper during the years 1895 to 1906, inclusive, or such part thereof as is not covered by the statute of limitations; the contention on the part of the plaintiff being that, when the defendant was paid by the state at the rate of 75 cents per folio for its publication of the laws in the Journal as a state paper, it was fully compensated, and that the payment by the state to the defendant for the publication of the Session Laws as a county paper was illegal. The plaintiff contends that the bills presented by the defendant for the publication of the laws as a county paper were "fictitious and false," and that the Secretary of State, without knowledge of the fact that but one publication had been made, and relying upon defendant's statement to the effect that two publications had been made, certified said bills to the Comptroller, and that the same were thereupon illegally paid.

The provisions of the statute under which the state paper is designated read (Executive Law, § 73, as added by Laws 1893, § 2, c. 248):

"The Secretary of State, Comptroller and Treasurer shall, on or before the first day of January in each year, designate a daily newspaper, published in the city of Albany, to be known as the state paper, in which shall be published during the following year * * * the laws of the state. * * * The publication of such notices and advertisements shall be additional to their publication in other newspapers."

The Attorney General contends that the defendant having made no more than one publication of any of the laws and having been paid therefor at the rate of 75 cents per folio, was not entitled to recover 30 cents per folio, or anything, as compensation for a publication by it as a county paper.

If the Journal was the state paper and another had been designated by the board of supervisors as the county paper, there is little question but that the Journal would be limited in compensation to the payment of 75 cents per folio, and the county paper would be paid under the law 30 cents per folio, but when the Journal has been designated as both the state and county paper, and has published the statutes required to be published as such papers, is it proper and legal to compensate the Journal to the extent of paying to it $1.05 for the publications made?

The courts have not passed upon this question. For a long period of years it has been the unbroken custom of the state officials to make the payments not only to the Journal, but to the Albany Argus in the manner in which the payments here questioned were made to the Journal. The Atlas and Argus, published in the city of Albany, was the state paper from 1859 to March, 1865, and the Argus was the state

paper from March, 1869, to March, 1873, and again from 1877 to 1881,; and from 1886 to 1889, and from 1891 to 1894. It was during most of the same period also the county paper. It was the county paper from 1865 until 1870, and from 1870 or thereabouts to 1893.

The Argus did not publish the general laws separate and apart from its publication of the Session Laws, and it did not make two publica-tions of the same enactment. Bills were rendered by the Argus Com-pany and paid in full subject to the correction of technical errors of computation in the same manner in which the amounts here in question have been paid to the defendant.

It is conceded by the Attorney General that if the publication had been made by the defendant one day as a state paper and another day as the county paper—that is, if the defendant had published the gen-eral laws in one edition and in another edition had published the Ses-sion Laws—that then the defendant would not have been entitled to the compensation which has been made by the state for the publications both as state and county papers. In other words, the contention of the plaintiff is that the Journal Company notwithstanding the designa-tion of the Journal as a county paper and as a state paper and not-withstanding the requirements with reference to the publication of the laws therein, respectively, could not have been paid under any cir-cumstances in excess of 75 cents per folio, and that any payment made in excess of that amount by the state authorities was illegal, and with-in the statute of limitations can now be recovered.

The action seems to have been commenced upon the theory that fraud had been perpetrated by the defendant. The theory was aban-doned upon the trial. The minutes of the trial show that the Attor-ney General stated that it is not necessary to show fraud or bad faith, and that there is no intent of fraud or bad faith in it, that is, in the case.

He argues in his brief that this "action is one for moneys had and received"; that:

"The allegations of the complaint that the bills were false and fictitious and with respect to the lack of knowledge on the part of the Secretary of State, etc., constitute no necessary part of the cause of action, but are used simply for the purpose of obviating any claim which might be made that the moneys were paid to the defendant pursuant to a lawful audit."

And again the Attorney General says in his brief:

"The action for money had and received, though in the theory of the com-mon law an action in assumpsit, and hence an action ex contractu is in reality in the nature of a bill in equity, and the gist of the action is that the party is obliged by the ties of equity and natural justice to refund the money."

It therefore seems safe to assume that the theory upon which the plaintiff seeks to recover money had and received by the defendant is because the defendant should be obliged by "the ties of equity and natural justice to refund the money."

There is no proof of fraud or bad faith on the part of defendant.

The plaintiff conceded that recovery cannot be had unless the state officers were without jurisdiction to audit or allow the claims.

The failure of jurisdiction, as alleged, arises as plaintiff contends from the fact that there is no statute which could honestly and fairly

be interpreted by the officers charged with its interpretation under which the audit could be made. If the state officers honestly allowed the claim, within their jurisdiction, and no fraud has been practiced, the liability of the state to pay, as it did pay, is established.

This action is in reality one involving the legality of an audit by state officers who are empowered to audit. The plaintiff contends that there is no allegation that the bills were audited by the Comptroller, but that the position of the plaintiff is that the bills were fictitious and false.

[1] At the same time the plaintiff argues that the complaint sets forth facts which, if true, would establish that the audit or payment was procured or brought about through false or fraudulent representations of the defendant, thus presenting the question, as above stated, as to the legality of the audit. Our attention is called in the Attorney General's brief to the authorities to the effect that "an action of this character to vacate or set aside an audit may be sustained."

Bills were presented by the defendant to the Secretary of State. He certified the publication. The Comptroller examining the bills accompanied by the certificate of the Secretary of State makes an award, draws a draft upon the State Treasurer and he certifies, based upon the certificates and bills which have come to him, that the state treasury owes the money for the services rendered. This was an audit.

Unless the plaintiff proves that the claim thus audited was on its face so manifestly illegal that the Comptroller was without jurisdiction to make the award, or the audit that he did, or unless the plaintiff proves that the amount paid was so far in excess of the just compensation so that it is inequitable for the defendant to retain the excess, the plaintiff cannot recover.

The state officials knew that the Journal was the state paper, and also that it was the county paper. They were furnished with papers showing the publication of the statutes. They did not act in ignorance of what had been done or how the publication had been made. They not only acted intelligently, but they acted without false representations having been made to them or without any fraud having been perpetrated by the defendant or any other person. They acted with their eyes wide open, with their knowledge complete, and with long years of precedent justifying and sustaining their acts.

The policy of the state seemed to be to pay 75 cents a folio·for making the laws known to the people of the state, through the publication in the state paper, and no doubt subscribers took the Journal because it was the state paper for the purpose of keeping advised as to the enactment of the laws. And the policy of the state was to pay 30 cents a folio for the publication in the paper as a county paper.

[2] There certainly is no objection to one newspaper being both the state paper and the county paper. It is not the exception; it seems to be the rule. An intent that when one paper was both the state and the county paper that the compensation should be only at the rate of 75 cents per folio is not so clear and obvious, in the light of the practical construction and interpretation of the legislative intent and meaning which has been placed upon it by the Secretary of State

and the Comptroller in the auditing and certification of the bills here in question, and of those for many years previously rendered and paid by the state. Whatever of statutory doubt there may be seems to have been practically determined by the officers of the state and foundation has not been laid or proof made which would justify a judgment awarding to the plaintiff a recovery against the defendant for moneys paid to the defendant for the publication in the Journal as a county paper for the last 6 or 10 years, depending upon what the statute of limitations is.

The court is not passing upon the reasonableness of the compensation awarded, upon the necessity for the publication of Session Laws as they are published under the law, of the propriety of making one newspaper both the state and the county paper, or of the necessity or lack of necessity of any such publication, but is endeavoring to do justice between these parties, having in mind whether under the law and by the rules of equity the one party is obliged by "the ties of equity and natural justice to refund the money" in question. If the six-year statute of limitations controls the amount here involved is $896.40. If the ten-year limitation under section 1973 of the Code is controlling, the sum involved is $4,423.20.

The plaintiff proceeds upon the theory that the money paid to the defendant for the publication in the county paper should be refunded because an audit or the award had previously been made by the state officer for the publication of the laws in the state paper. There is no proof in the case as to which audit or award was made first. There is nothing to show that at the time the claim was presented for audit and award, which is now alleged by the plaintiff to have been improper and illegal, that any claim had been presented for audit or any award had been made under the statute designating the Journal as the state paper.

If the claim for publication under the county law as a county newspaper had been presented and an award had been made by the Comptroller, it certainly would not be illegal or illegally obtained. This refund could not be compelled without proof that at the time of the award there was such an illegality in it that the auditing officer was without jurisdiction to make it or that circumstances arising subsequently made it inequitable to retain the amount of the award.

Our attention is called to the recent decision in the Court of Appeals. People v. Sutherland, 100 N. E. 440. In that case it was decided:

"When a bill represents a charge illegal upon its face, the audit does not affect its character. In that event its validity may be controverted notwithstanding the audit."

And, speaking of the conclusiveness of an audit by the board of supervisors, the court says:

"That it does not extend so far as to embrace the audit of charges illegal upon their face or charges clearly prohibited by law."

The items audited by the board of supervisors in the Sutherland Case were clearly illegal and unlawful upon their face, because they

were .intended to cover services specified in the bill alleged to have been .rendered by the claimant, where the defendant was bound to render the services under the law without any compensation to be covered by the bill rendered to the board of supervisors except from fees specifically provided for in the statute.

The plaintiff contends that the claims here in question were not such charges, and such being the fact that the auditors had no jurisdiction to allow them and the payment of money was gratuitous. Such a claim, however, can only be made successfully where there is either prohibition against the payment of the claim or the payment of the claim is so manifestly without statutory support that argument to the contrary would be without avail.

As we understand the plaintiff's position here, it is, as presented by the Attorney General, that it is conceded that the plaintiff cannot recover in this action unless the proper state officers were without jurisdiction to audit or allow the claims. Our attention is called to the case of Nelson v. Mayor, 131 N. Y. 4, at page 16, 29 N. E. 814, at page 817, which says:

"When the auditors honestly allow a claim, acting within their jurisdiction, and no fraud has been practiced upon them in procuring the allowance, the liability of the municipality is fixed, and the claim is no longer subject to dispute."

The plaintiff has agreed that there is no fraud or bad faith in this case so far as the defendant is concerned, and bases the right of the people to recover solely upon the ground that there is no statute which could be fairly interpreted, by the officers charged with its interpretation, under which the award could be made, and that, therefore, the state officers making the award were without jurisdiction.

[3] The audit of this bill by the state officers authorized by law to make the award was a judicial act and while as such officers they would have had no power to allow a claim not legally chargeable to the state or payable out of the state treasury, and if any such award was made by them it would have been void, yet, in the absence of fraud, if as such auditors they could have determined that an award was proper, and did determine that the claim was a legal one against the state, their act in awarding or auditing as such was not null or void, although, even if the same claim had been presented to another body of competent jurisdiction who had or might have determined that the claim was illegal.

There was no failure of consideration, the publication was made, and requisite proof of publication was presented to the state officers who made the award.

Judgment may be entered dismissing the complaint, with costs.