Lucius Wilmerding, Jr., Plaintiff, *v.* John P. O'Brien, as Mayor, etc., and Others, Defendants.

Supreme Court, New York County, December 14, 1933.

*Harold Riegelman,* for the plaintiff.

*Jacobson, O' Neill & Baum [Isaac N. Jacobson* of counsel], for the defendant McQuade.

*Arthur J. W. Hilly, Corporation Counsel,* for the other defendants.

COLLINS, J. Plaintiff taxpayer sues to nullify the appointment of defendant Francis X. McQuade as assistant corporation counsel of the city of New York and to temporarily and permanently restrain defendant Arthur J. W. Hilly, corporation counsel of that city, from continuing McQuade in the city employ, to restrain defendant comptroller from paying McQuade's salary, and to enjoin the members of the board of estimate and apportionment from granting McQuade's application for a retirement allowance under chapter 26 of the Greater New York Charter.

The bases claimed for the action are: That McQuade's appointment as assistant corporation counsel was fraudulent and collusive and made for the sole purpose of permitting him ostensibly to bring himself within the provisions of the retirement allowance system; that the appointment was not made in good faith, was wrongful and illegal, *ultra vires* the corporation counsel, against public policy, and void.

Not only do the defendants categorically and affirmatively stoutly deny the charges, but, by a cross-motion, they (except McQuade) assail the legal sufficiency of the complaint.

McQuade has occupied various positions in the city government for about thirty years. From 1898 to 1902 he was an examiner in the office of the commissioner of accounts, following which he served for six years, and under three corporation counsels, as an assistant corporation counsel. In July, 1911, Mayor Gaynor appointed him a city magistrate and he served continuously on the bench until his resignation in December, 1930. On November 21, 1933, Corporation Counsel Hilly, after certifying to the budget director the necessity therefor, appointed McQuade as an assistant corporation counsel, and since taking the oath of that office he has served therein continuously. Notice of the appointment appeared in the *City Record* of December 2, 1933. On November 27, 1933, McQuade filed his application for retirement allowance under chapter 26. It is such application that precipitated this action.

The motion to restrain *pendente lite* presents the issue: Are sufficient facts revealed to compel the court to vitiate Hilly's appointment of McQuade as assistant corporation counsel and to thwart the board members from exercising their acknowledged powers regarding McQuade's application for retirement?

Necessarily, this issue must be determined by the law, not by

clamor. The attacked, as well as the acclaimed, the challenged, as well as the challenger, are entitled to equal consideration by the courts; otherwise " equality before the law " would be but an inarticulate legend instead of a pulsating principle to be applied whenever and wherever the right demands its invocation.

Neither the good taste of McQuade's appointment as assistant corporation counsel, nor his fitness or qualifications for the post, can be entangled with the concrete issue before the court. Prudence and responsibility for that appointment resided and reside with others. That this court is without supervisory powers over such proprieties is self-evident.

Let us consider: *First.* The retirement allowance system; *second,* the grounds advanced by the plaintiff as precluding McQuade from claiming the avails of that system, and *third,* whether those grounds meet the legal test.

*First.* Plaintiff's counsel frankly admits that this application has served to exaggerate and embolden the general misconception concerning the retirement allowance system, within the operation of which McQuade seeks to become enfolded.

It is not a " pension " system in the banal comprehension of that term. Conditions of the application for retirement, the granting or the withholding thereof, do not by any means depend upon whim or charity. It is a definitive and comprehensive system, the launching of which was authorized by the Legislature, and its regulation is governed by the provisions of chapter 26 of the New York Charter. Under this system there is regularly deducted from the salary of its members a fixed sum which is retained in the retirement fund. The plaintiff concedes that during the thirty years of McQuade's service in the city, $9,000 of his salary was paid into and is now held in this fund. At a certain age a member may retire and apply for the allowance. The allowance is calculated upon the character of service performed, its duration and the amount paid into the fund by the applicant. Thus, we perceive that the allowance is not a gratuity. In no sense does it operate as a raid upon the city treasury; nor does it constitute a dissipation or waste of the public funds. In its essence it amounts to a withdrawal by a member of his own accumulated funds, supplemented by an additional sum based upon length and nature of service. It is patterned after the retirement systems of many progressive industrial enterprises, the adoption of which have been praised rather than condemned. It is akin to endowment insurance. An award for long and faithful service, especially when the recipient contributes his own money thereto, cannot justly be characterized as a fraud upon the public.

Whether the system be wise or folly, whether it be inefficiently or incompetently managed, is not addressed to this court. The system was not fashioned by the courts; the courts did not promulgate the rules thereunder; the courts have no part in its conduct, nor are they invested with supervision over the administrative functions or duties of those intrusted by law with the management and enforcement of the system.

We proceed, then, from this indisputable premise: A retirement system has been established, the legality of which is not challenged; its control and operation is lodged with the board of estimate; McQuade has served the city for thirty years; neither his integrity nor his competency is impugned by the plaintiff; over the thirty-year period there was deducted from McQuade's salary $9,000, which the city now holds; on November 21, 1933, McQuade, upon the request of the corporation counsel, was appointed an assistant to that official; McQuade has attained the age of fifty-five, which enables him to apply for retirement allowance; he has so applied; the application, the plaintiff concedes, is *prima facie* regular; the board is about to act upon the application. Why, then, should this court interfere? This brings us to

*Second.* There is no direct or positive proof of illegality or fraud or collusion. The plaintiff draws upon inferences. He clings to two circumstances as justifying the conclusion: (a) That McQuade resigned as city magistrate while under investigation, and (b) that there was no authority for his appointment as assistant corporation counsel. With these two circumstances as an hypothesis the plaintiff asks the court to infer and adjudge that the appointment was fraudulent, collusive and void.

(a) During the investigation of the Magistrate Courts of this department conducted by Judge Samuel Seabury, private hearings were held concerning the business activities of McQuade. McQuade's official conduct was not questioned. It was claimed that his commercial activities interfered with the performance of his duties and, therefore, violated former section 102 (now section 161) of the Inferior Criminal Courts Act, prohibiting a magistrate from engaging " in any other business or profession " and requiring him to " devote his whole time and capacity, so far as the public interest demands, to the duties of his office." A magistrate's removal by the Appellate Division " for cause " is authorized by section 162 (then 103) of the Inferior Criminal Courts Act.

Pending the private hearings McQuade resigned. The plaintiff insists that the resignation anticipated and sought to forestall removal. McQuade's explanation of his resignation is that he was motivated by the circumstances involved in the civil action

of *McQuade* v. *Stoneham and McGraw* (142 Misc. 842; affd., 238 App. Div. 827), tried before Mr. Justice McCook of this court. Concerning McQuade's resignation, it is sufficient for the present purpose to indicate: (1) That Judge Seabury's report states: " Notwithstanding what has been said about him, it is only fair unequivocally to state that no evidence was received by the referee showing any act of corruption by Magistrate McQuade in reference to his judicial duties; " (2) that Judge McCook, in his opinion in the civil action just mentioned, held: " This ruling, together with the decisions of the same court in the *Deuel, Levy* and *Brodsky* cases (127 App. Div. 640; 198 id. 327, and 232 id. 675, respectively), constrains me to hold that plaintiff was not engaged in business within the meaning of the statutory prohibition.  *  *  *  Proof is utterly lacking to show that the plaintiff while occupying the office of magistrate did not ' devote his whole time and capacity, so far as the public interest demands, to the duties of his office.' " (142 Misc. 842; affd., 238 App. Div. 827.)

Regardless of the precise inspiration which resulted in McQuade's resignation from the magistracy, it would be a tax upon credulity to hold that it was part of a plot to apply for retirement allowance.

(b) To sustain the plaintiff's contention that McQuade's appointment as assistant corporation counsel was illegal, he relies upon (1) that there was no vacancy and that the appointment did not comply with the board of estimate's resolution; (2) that the designation was surreptitious, and (3) that the application for retirement followed only six days after the appointment.

1. When the board of estimate reopened the 1933 budget it resolved that no vacancies existing on January 1, 1933, or thereafter occurring (with certain exceptions) would be filled unless the head of the department applied for permission therefor to the director of the budget, whereupon the director of the budget was required to investigate the application and either disapprove the application or issue a certificate authorizing the filling of the vacancy. Although the corporation counsel, on November 11, 1933, applied to the director of the budget for permission to fill a vacancy in the main office of the corporation counsel, and outlined the reasons therefor, and although permission was granted and the vacancy filled, the plaintiff attacks the sufficiency of the permission and urges non-compliance with the board's resolution.

I am satisfied that there was a substantial compliance with the resolution. The corporation counsel affirms that at the time of the appointment he had known McQuade well and favorably for about twenty-five years; that in the spring of 1932 McQuade applied to him for a position in the corporation counsel's office;

that at that time there was no vacancy; that McQuade was so advised, and was told further that " it might be conceivable that the force would become reduced to such a point that some vacancies must be filled in order to carry on the work of the office." McQuade applied several times thereafter. Finally, in November, 1933, McQuade was given the appointment. The corporation counsel asserts that at no time was the question of McQuade's retirement from the service discussed with him, and that he " had no knowledge whatever that he [McQuade] contemplated applying for retirement until his application was filed on or about November 27, 1933."

2. That McQuade's appointment was not heralded or made the occasion for the publication of banns does not substantiate or infer illegality, fraud or collusion. As observed, the *City Record* noted the appointment. Further, McQuade's name appeared on the city payrolls; also a matter of public record.

3. The circumstance that McQuade applied for retirement allowance six days after he was named assistant corporation counsel adds nothing of weight to the claim of illegality, fraud and collusion. With the delicacies of the application, this court is not concerned. Bad taste is not fraud. Lack of sensitiveness is not illegality. Applying for the withdrawal of one's own money, plus an additional sum for thirty years of service, is not corrupt. Designating as assistant corporation counsel, and an acceptance of the designation, does not spell collusion.

*Third.* A mere recital of the circumstances upon which the plaintiff leans as supporting the charge of fraud, illegality and collusion discloses not only their weakness but their total insufficiency to meet the test which the law demands. That fraud must be established, and not presumed, is axiomatic. True, it may be established by circumstances, but the circumstances must be clear and convincing and lead logically and irresistibly to fraud. Atmosphere cannot substitute for facts.

The principle announced and reannounced in the cases cited by the plaintiff is free from question. The vice of the plaintiff's position is that the circumstances which he presents as facts do not meet the test. Indubitably the plaintiff is not required to " show precisely how or when the fraud was concocted, or what particular city officials were implicated in it." It is " enough to show that the contract with whomsoever made was the creature of fraud." (*Nelson* v. *Mayor, etc., of New York*, 131 N. Y. 4, 14.) But fraud there must be, if the contract is to be invalidated. Can this court say that the circumstances here relied upon are " not equally consistent with innocence " as with guilt? (*Nelson* v. *Mayor, etc., of New York, supra.*) The official acts of public

officers are accountable to a high standard of morality and rectitude. They must serve the public faithfully and honestly, but the motives of a public official are not presumed to be corrupt or fraudulent merely because he is a public servant. The contrary is the law. " The general presumption is that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done." (*Matter of Marcellus*, 165 N. Y. 70, 77; *Matter of Whitman*, 225 id. 1, 9; *Matter of Hirshfield* v. *Craig*, 239 id. 98; *Beardsley* v. *Kilmer*, 236 id. 80, 88, 90.) " When any judicial or official act is shown to have been done in a manner substantially regular, it is presumed that formal requisites for its validity were complied with." (Stephens Ev. art. 101.) This presumption, of course, is rebuttable by affirmative evidence of irregularity. The burden of producing such evidence rests upon him who asserts unlawful or irregular conduct. (*Culp* v. *City of New York*, 146 App. Div. 326; *United States* v. *Chemical Foundation*, 272 U. S. 1.)

I cannot find fraud or collusion or illegality in the defendants' acts. An applicant for retirement allowance is not in quest of alms; he is doing something which the law authorizes and contemplates. Wherein lies the fraud? Certainly it was never contemplated that when a city employee applied for a retirement allowance a court could fine-toothcomb his record and examine into every instance of irregularity or dereliction. The fitness of one who is appointed or retained in office must be assumed. For unsatisfactory public service redress must be sought in the political, not the judicial forum. The process to be resorted to is the ballot, not the writ.

It is not timidity but a due recognition of the existence of, and the necessity for, an orderly and stable government that motivates non-interference by the courts with the duties and functions of another branch of the body politic.

I hold, therefore, that the plaintiff has not made out a case entitling him to the relief sought. And since the complaint alleges conclusions only, instead of ultimate facts, the challenge to its legal sufficiency must be sustained.

Plaintiff's application for an injunction *pendente lite* denied. Defendants' cross-motion to dismiss complaint granted, with leave to amend if plaintiff so elects within ten days from the service of copy of order with notice of entry. Settle orders on notice.