SYDNEY SHEPARD, Respondent,

*vs.*

THE MILWAUKEE GAS LIGHT COMPANY, Appellant.

| 6 | 539 |
|---|---|
| 81 | 242 |

| 6 | 539 |
|---|---|
| 57 LRA | 762 |

APPEAL FROM MILWAUKEE COUNTY COURT

The Milwaukee Gas Light Company is bound to furnish gas to a citizen who has made all the necessary preparation to receive and use the same in his store or residence along the line of the company's pipes, upon the compliance by the citizen with such reasonable terms as the company may rightfully impose.

The Milwaukee Gas Light Company have the right to make all such needful rules and regulations for their own, and the safety and convenience of the public, as are reasonable and just, and to require a promise of conformity on the part of the consumer.

Regulations of the company considered.

This .action was commenced before Albert Smith, Esq., a justice of the peace in and for the county of Milwaukee, and the complaint set forth that the plaintiff was in possession of the store, No. 189 East Water street, city of Milwaukee; that said plaintiff was doing business in said store as a merchant; that the defendants were an incorporated company, and by the terms of their charter were authorized to make and sell gas, and were engaged in making and selling gas; and that by the terms of a certain contract entered into between the city of Milwaukee and John Lockwood, and assigned by Lockwood to the defendants, and of their charter, they were bound to furnish gas to the citizens of the city of Milwaukee; that the plaintiff had demanded gas for his said store, and tendered to the defendant at the time of the demand, five dollars in gold; that plaintiff's store was on the line of the defendant's main gas pipe; that the defendant had refused and did refuse to furnish the gas to plaintiff, to his damages one hundred dollars.

The defendant answered admitting the facts set forth in the complaint, and setting up that under their charter they had made certain by-laws (which are hereinafter set forth); that the defendant had refused to assent to said by-laws, and would not sign the application book, allowing him to take the gas subject to the terms and conditions of the said by-laws.

The case was tried before the justice, and upon facts proved and admitted the justice rendered judgment in favor of the defendant.

The plaintiff took the cause by appeal to the county court of Milwaukee county, when the same was tried at the September term by consent of parties, by the court, and the case submitted on a statement of facts admitted by both parties.

June 15th, 1857. The judge filed his opinion and entered judgment for one hundred dollars and costs in favor of the plaintiff and against the defendant, from which the defendant appealed.

The material facts, as agreed upon by the parties, are sufficiently set out in the opinion of the court. The sole ground of refusal to furnish the gas, was the refusal of the plaintiff to sign the by-laws and regulations contained in the application book of the company. So far as these are adjudicated upon by the court, they are set forth in the opinion.

*Wm. P. Lynde*, for appellant.

There are but two questions involved in this case:

First. Whether the plaintiff has a legal right to be supplied by the Gas Company with gas without its consent?

Second. Was the Gas Company bound to furnish gas to the plaintiff, upon a tender of the usual rates, without an offer to comply with such reasonable rules and regulations as might be necessary for the protection of the rights and property of the company?

And after arguing these questions at length, he insisted upon the following points as established by reason and authority:

The charter of the company does not require the company to furnish gas to any person without selling it. If private property is taken by the State for public use, by virtue of the right of eminent domain, the constitution provides that the owner shall receive compensation therefor: but that constitutes no sale; it is taking private property for public use. If the company were required to *furnish* gas to the citizens of Milwaukee at a certain price, it would be no sale. The right of property would then be in the person applying for gas; the company would be but a servant of the public, entrusted with the property of the public, and entitled to certain rates or tolls for the services rendered. *Charles River Bridge Case,* 11 Pet. Rep., 639; 2 Barn & Adol. 739; 1 Parsons on Cont., 41; Addison on Cont., 155; Brown's Const. Law, 668; *Robinson* vs. *Gill,* 74 Eng. Com. Law R.. 191; *Carr* vs. *Platt,* 6 Ex. Rep., 764, S. C.; 7 Ex. Rep., 465; *Angel & Ames* on Corp., § 359; *Mechanics' Bank* vs. *Smith,* 19 J. R., 115; *Bk. Wilmington and Brandywine* vs. *Walloston,* 3 Harr. Rep., 90.

The plaintiff has not shown any contract, neither has he brought himself within the terms of the charter or the contract with the city of Milwaukee, so as to entitle him to the right to be supplied with gas by the Gas Company.

The defendant has not infringed or withheld from the plaintiff any legal right, or violated any legal duty.

*Smith and Salomon,* for the respondent, contended that the clause in the charter of the company authorizing them to make by-laws, confers no right which they would not have had as incident to their charter. But these by-laws or rules made by the company must be reasonable. They must be limited to the scope of the general powers of the corporation, and to the objects for which it was created. The company is not invested with any general legislative powers, nor with authority over any persons but its own members and officers. Its by-laws cannot affect the rights of consumers or others any further than is necessary to enable the company to transact its business,

perform the duties imposed, and enjoy the privileges conferred by its charter. The company has full right to govern itself. It has no right to govern the people at large, whether their dwellings happen to be lighted by oil or gas. Angel and Ames on Corporations, 330 to 337, 347. Grant, do., 76 to 84. Kyd, do. And that the applicant could not be required to sign any such rules, as a condition to his being furnished with gas. Nor can the gas company insist that an applicant shall enter into a contract with them, before it will perform its duty and furnish gas. The company may make proper rules and regulations, but it cannot require consumers to promise obedience to them, or even to admit their validity. The company has a public duty to perform, which it must discharge without discrimination of persons. It cannot insist upon conditions precedent. It cannot require previous submission to its dictates, nor promises of good behavior. The law throws around it ample protection and invests it with the means to secure entire justice to itself. If its regulations are proper in themselves and confined to legitimate objects, they can be legally enforced, without the intervention of a contract. The consumer is bound as well without as with a promise to abide by them. If any of the rules are improper, it is manifestly wrong to allow the company to require such promise of obedience. For, though the by-law be bad, a contract to observe it might be valid. Angel and Ames on Corp., 342. The corporation must perform its duty—its whole duty—and for that the public may hold it responsible. So every man dealing with it must perform his duty towards the company, or he will be held responsible by the same law which guards his rights. It is not for the company to evade its duties or enlarge its rights, except by contract freely made for an adequate consideration—not by a bargain forced upon the citizen under the penalty of being deprived of the use of gas during the whole time the charter of this corporation has to run. Let the company make its rules. Let it publish them. Let it enforce them by appropriate means, as it may easily do, if the rules are proper. But let it not assume to be the sole judge of the propriety of these regulations. That

is a question for the judicial tribunals. It is not to be removed from them by the machinery of a rule, which at the s'art takes away all right of resort to these tribunals, and forces the public to concede to the company the whole matter in dispute.

Objection was taken to several of the articles of the by-laws or regulations separately which are noticed in the opinion.

The arguments of counsel are too long, to be inserted entire, but the above is a synopsis.

*By the Court*, SMITH, J.—The material facts in this case, are as follows : The defendant is a chartered company, or corporation, having the exclusive right to manufacture and sell gas for the purpose of lighting the city of Milwaukee, and the places of business and residences of the inhabitants of said city, according to the terms of a contract entered into, originally, between John Lockwood and said city, and in conformity with the duties and obligations resulting from the act of its incorporation.

The plaintiff was a merchant doing business on East Water street in said city, along which the gas pipes of the company were laid, and had fitted up his store with the necessary pipes, tubes, burners, and apparatus for lighting it with gas. He then applied to the company to furnish him with gas, and tendered five dollars in advance payment therefor. The company, before they would furnish the gas, required the plaintiff to sign what purported to be an agreement, and was at least, a promise to take gas according to the terms and conditions, contained in the printed "rules and regulations" of the company, which were introduced in evidence.. This the plaintiff refused to sign, and for that reason, and none other, the company refused to furnish him with gas. The plaintiff then brought his action to recover damages of the said company for such refusal, in a justice's court, claiming damages to the amount of $100, where the defendant obtained judgment, and the plaintiff appealed. The county court reversed the judgment of the

justice and gave judgment for the amount claimed and costs. The defendant now brings the case here by appeal to be reviewed.

We understand that this case comes before the court in entire good faith and with a sincere desire to arrive at the just rights of the parties. It has been argued with great ability and candor on both sides, and we have given the questions involved a consideration beyond what was necessary to determine this particular appeal. Indeed we were informed upon the argument, that it was the desire particularly of the appellants, that this court should review their regulations, and pass upon their validity. We therefore enter upon an examination of these "regulations," so far as we deem it necessary, not only without embarrassment, but greatly aided by the full and candid arguments which have been submitted.

It is conceded that there are but two questions necessary to be determined:

First. Was the gas company bound to furnish the plaintiff with gas, under the circumstances of preparation and fixtures admitted to have been made, upon his complying with such conditions as the company might rightfully impose? and

Second. If so, whether the company could rightfully require the plaintiff to sign the agreement, promise or regulations mentioned, before he was entitled to demand and have gas supplied by them, upon a tender of the usual rates?

It must be recollected that the fixtures and all apparatus of the plaintiff for receiving and using the gas were perfect, and the only reason for refusing to furnish the gas was, that the plaintiff refused to sign the "regulations" prescribed by the company.

Although the county judge says that the point involved in the first question was conceded in favor of the plaintiff on the trial below, yet we do not understand it to to be conceded here, and we therefore proceed to examine the question.

That the company were empowered to impose reasonable regulations upon such of the citizens of the city of Milwaukee as might desire to be furnished with gas, we have no doubt.

Shepard vs. Milwaukee Gas Light Co.

But the question is, whether the citizen, willing to submit and conform to all such regulations as the company might rightfully impose, was entitled to demand of, and be supplied with, gas, by the company? In other words, was not the company bound to sell their gas at the usual rates to all and every citizen of Milwaukee, who was prepared by pipes and the necessary fixtures for its consumption and use, upon compliance with such conditions and regulations as the company might rightfully impose?

In considering this question, it is not deemed necessary to examine critically the contract of Lockwood with the city, or the charter of the gas company in detail. It is sufficient for the purposes of this case, to know that the company had the exclusive right to manufacture and sell gas, and that hence the only means of supply available to the citizens, was through the agency of the company. It is within the every day experience of us all, and hence within the judicial knowledge of the court, that the manufacture and supply of inflammable gas for the purpose of lighting cities, stores and dwellings, is not a domestic or family manufacture. It is carried on, either by public, or associated capital, and is dependent for its profit, upon general consumption. Corporations of this kind are not like trading or manufacturing corporations, the purview of whose operations is as extensive as commerce itself, and whose productions may be transported from market to market throughout the world. Their product is designed for the consumption of the immediate community in which the manufacture is wrought. It is not a trading corporation, for its product depends exclusively upon home consumption. If gas were an article of merchandise, and could be bottled or packed up, and imported or exported like " soap, candles or hats," to be distributed to the various markets of commerce, there might possibly be claimed for it the character of merchandise, or manufactures partaking of that attribute. But such is not the fact. Its manufacture depends upon the consumption of the immediate neighborhood for its profit and success, and upon no other place. It is local, and hence not commercial. It is consumed upon the spot of

its manufacture, and hence can have no affinity with articles of trade. Its success necessarily depends upon its general use in the vicinity of its manufacture; and seriously affects the public policy and individual convenience of the immediate community. The gas is not sold to whomsoever will buy, but is offered to be, and is furnished to whomsoever is prepared to, and will take and use it. It is not an article of trade, because it is not bought, measured and delivered in quantity, but is furnished, used and to be paid for after it is used, because it cannot be measured before. From the nature of the article, the objects of the company, their relations to the community, and from all the considerations before mentioned, it is to me apparent that the company is not at all analagous to an ordinary manufacturing or trading corporation.

But it is asked, would a soap and candle factory, or a hat or carriage factory, with the privilege of laying pipes in the public streets, make it a public corporation, and oblige the company to furnish soap, candles or carriages to any citizen upon tender of a fair compensation? Perhaps not. The citizen could procure his soap, candles and carriages elsewhere. These are all articles of trade, capable of transportation, from place to place, and, as is sometimes alleged, the incorporation of companies for their manufacture, does not interfere with the rights or privileges of private citizens. But suppose the citizen was prohibited from obtaining soap, candles or carriages from any other than the particular corporation, how would the case stand? could such company wantonly refuse to sell to the citizen upon the usual terms?

However, if these reasons are insufficient to distinguish the character of this corporation, we proceed to examine another already in part considered, which to our mind is conclusive; viz: the exclusive privilege conferred upon the company to manufacture and furnish or sell the gas.

The very fact of this exclusive right conferred upon the company to manufacture and sell gas in the city, to be consumed therein by the citizens thereof would imply an obligation on the part of the company to furnish the city and citizens

with a reasonable supply, on reasonable terms. And when the nature and objects of the corporation are considered, viz : the exclusive right to manufacture and sell gas, *for the purpose of lighting the city of Milwaukee, and the dwellings and business places of its inhabitants,* how can it be urged that this is a mere private corporation for the manufacture and sale of a commercial commodity. The very term is incompatible with the idea of trade and commerce. It is not in its nature interchangable, but merely consumable, and consumable only at the place of delivery in the immediate vicinity of its production. If a company were chartered with the exclusive privilege of manufacturing and selling bread in the city of Milwaukee, would it be contended that the company were under no obligation to supply or sell bread to any but such person or persons as the company should capriciously select? Odious, as were monopolies to the common law, they are still more repugnant to the genius and spirit of our republican institutions, and are only to be tolerated on the occasion of great public convenience or necessity ; and they always imply a corresponding duty to the public to meet the convenience or necessity which tolerates their existence.

The successful operation of this gas company, worked a radical change in the mode of lighting the streets, dwellings and places of business in the city, and created thereby a sort of necessity for the article, to produce which, the exclusive privilege was conferred upon them, and hence they assumed the correlative duty of supplying this necessity.

We think there can be no doubt, that the company were bound to furnish the gas to the plaintiff, upon his complying with such reasonable conditions or terms as they might rightfully impose.

The only reason urged for refusing to furnish the gas to the plaintiff was, that he refused to sign the regulations adopted by the company. This leads us to examine those regulations, and to determine whether or not they were such as the company could rightfully require the plaintiff to subscribe to, as a condition precedent to his right to demand the gas.

We shall not attempt to discuss all of these regulations, separately, though we are requested so to do; but shall only point out some of them which we think are unreasonable, and which the company had no right to impose. But before doing so, we wish to be distinctly understood, that in our opinion, they have a right to make all such needful rules and regulations for their own and the convenience and security of the the public, as are reasonable and just, and to exact a promise of conformity thereto. But these rules and regulations must be reasonable, just, lawful, not capricious, arbitrary, oppressive or unreasonable. Were it not so, the whole net work of pipes and machinery would be at the mercy of the careless, the fraudulent or the malignant. From the nature of the article produced and used, as well as from the manner of its use, great care is requisite in its management, and there is a kind of implied duty or obligation resting upon those who use the gas, to use it in such a manner as not to injure or endanger others who use it. Hence we see no objection to a rule or regulation of the company requiring application for gas to be made in writing, and requiring the applicant to sign reasonable regulations.

The 3d rule of the company, allowing the company to demand security for the gas consumed, or a deposite of money to secure payment thereof, appears to be just, and necessary to guard against loss. As the delivery of the gas is necessarily its consumption, and as the amount delivered is ascertained by the amount consumed, it would seem to be just and right that the company should not be compelled to furnish it without reasonable security for payment, in convenient amounts and at proper periods.

The 9th rule is also objected to as illegal. This authorizes the company, by their inspector, to have free access at *all times* to buildings and dwellings, to examine the whole apparatus and for the removal of the meter and service pipe.

The gas apparatus in the buildings, stores and dwellings, is the property of the individual, put up at his own expense, in which the company have no interest. It may be proper for

the company to have the right of inspecting the gas apparatus, to determine its sufficiency and safety, and at stated periods to inspect the same, or perhaps oftener, upon reasonable notice therefor. But certainly it cannot be necessary that the dwellings of gas consumers should be subject to instantaneous visitation at all times, without notice. Nor is it to be conceded that the company should have the right at all times to enter the premises and remove the service and meter at their pleasure. This regulation is too general, and cannot be upheld, or at least a party cannot be required to subscribe to it, to entitle him to be furnished with gas.

Another regulation (14) reserves to the company the right at any time to cut off communication of the service pipe, if they shall find it necessary so to do, to protect the works against abuse or fraud. Here the company assume the whole power to decide upon the question of abuse or fraud, either in fact or in anticipation, without notice, without trial, of their own mere motion. This summary jurisdiction would not be given to any of the judicial courts in any case, but upon the most urgent emergency. Much less could it have been the intention to confer such power upon one of the parties to a contract of such vital importance. It is no hardship for the company to resort to the same tribunals, upon like process, for protection against fraud, as the law provides for individuals.

Rule 16 provides, that after the admission of gas into the fittings, they must not be disconnected or opened, either for alteration or repairs, or extensions, without a permit from the company, which may be obtained at their office, free of expense ; and any gas fitter or other person, who may violate this regulation, will be held liable to pay treble the amount of damages occasioned thereby.

It is not to be allowed that the gas company can impose penalties in this way, or make the submission to such penalties a condition precedent to the right of the citizen to be furnished with gas. It is singular, if the legislature has given to the gas company the right to inhibit the citizen from altering the arrangement of his gas apparatus in his dwelling, without their

assent first had and obtained, or from extending the same; and still more singular that the company should claim the sovereign right to inflict penalties upon him for doing so, and not him only, but upon any other person who should act in the matter without their consent. The statement of this proposition is its answer.

Rule 17 provides, that the company shall have the right to substitute alcohol for water in the meters, and charge therefor. All that is necessary to observe upon this regulation, is, that the company are entitled to charge for the gas consumed, and that some accurate mode of measurement must be used, whether of alcohol or water. The consumer must pay the legal rates for the quantity consumed; and the mode of measurement, whatever it is, must be correct.

Rule 21 assumes for the company the power to make any other rules or regulations, from time to time, under which the gas company will furnish private consumers, as experience shall suggest, .&c.

What we have said before as to the power of the company to prescribe *reasonable* rules and regulations, is a sufficient answer to the question raised, or which may be raised thereon.

It is not necessary to go farther. Indeed we might have stopped much earlier, and would have done so, but for what we understood to be the desire of the parties for a full examination of all the questions involved in this action.

Without recapitulation, we have no doubt that the judgment of the county court was right, and that the judgment ought to be, and it is affirmed with costs.