NORTHERN WESTCHESTER LIGHTING COMPANY, Respondent, *v.* THE PRESIDENT AND TRUSTEES OF THE VILLAGE OF OSSINING, Appellant.

Second Department, May 25, 1917.

Municipal corporations — contract between electric light company and village for street lighting construed — when contract not extended by acts of village and its officers — implied contract — recovery upon quantum meruit — furnishing of free light at places to be designated — condition precedent — effect of reducing number of watts to each lamp — discrimination in rates — comparison with other municipalities — recovery based on rates determined by Public Service Commission.

Where the board of trustees of a village, prior to the expiration of its contract with an electric lighting company for lighting its streets, refused to approve a new contract and directed the corporation counsel to apply to the Public Service Commission to adjust the cost of electric lighting, and said application was made, the fact that on the day of the expiration of the prior contract the lighting company wrote a letter to the president of the village, stating that until further agreement for lighting it should expect the village to continue to pay the rate provided in the existing contract, to which letter no direct answer was ever made, and the further fact that the village audited bills for the first four months after the expiration of the contract, did not establish an extension of the prior contract so as to entitle the company to recover thereon.

There was, however, an implied contract, and a recovery might have been had as upon *quantum meruit*.

Under a provision of the franchise of a lighting company that it would supply a village free of charge with light to a certain amount at such

place or places as the board of trustees may appoint, the appointment of the places is a condition precedent to the furnishing of the service.

A lighting contract providing for a current of 100 watts to each incandescent lamp is not violated by the furnishing of 32 watts, where a better light is given thereby because of improvements and new inventions.

Where it is alleged that a lighting company discriminated in rates in a certain village, in comparison with other towns and villages, it must be established that the conditions and circumstances in the municipalities mentioned for comparison are similar to those existing in the village.

A judgment in favor of the plaintiff on the basis of the contract price for lighting should be reversed and a new trial granted, unless the parties stipulate that the defendant will pay, and the plaintiff will accept pay, for the lights actually furnished, other than free lights, at the rate determined by the Public Service Commission.

APPEAL by the defendant, The President and Trustees of the Village of Ossining, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 21st day of July, 1916, upon the decision of the court, a jury having been waived.

*Thomas G. Barnes* [*Benjamin Fagan* with him on the brief], for the appellant.

*Joseph A. Greene,* for the respondent.

JENKS, P. J.:

The plaintiff, an electric lighting corporation, has recovered a judgment against the village of Ossining for electric current furnished to light the public streets for the period intervening December 1, 1909, and January 1, 1913. It asserts that the agreed price and the reasonable value was $31,032.98, of which a part had been paid, leaving a balance of $16,032.98. On October 6, 1905, the parties entered into a contract for a term of five years for lighting the streets at an annual specified compensation. The learned Special Term found that after October 5, 1910, the parties further agreed to extend such contract at the rates set forth therein, and gave judgment accordingly. The decision rests upon the determination that the contract, that by its terms expired on October 5, 1910, was extended by agreement of the parties thereafter to cover the said period. Thus the basis of the recovery is not the value of the commodity, but a contract price therefor. The

recovery could not be sustained upon alleged value, both because the plaintiff did not attempt to establish value at the rate pleaded and the defendant gave proof sufficient upon this record to forbid it.

It is not contended that the parties made any formal extension of the contract or attempted to do so, but the plaintiff relies upon certain acts of omission and commission on the part of the defendant and its officers. Upon the expiration of the written contract, and on October 6, 1910, the following communication was sent to the president of the defendant:

"NORTHERN WESTCHESTER LIGHTING COMPANY,
     "F. A. STRATTON, *President.*
          "MT. VERNON, N. Y., *October* 6, 1910.
"VILLAGE OF OSSINING, WESTCHESTER COUNTY, N. Y.,
  "HON. ALBERT W. TWIGGAR, *Pres.:*

"DEAR SIR.— The contract for street lighting between this company and the Village of Ossining, as you know, expires to-night, and until the Village makes further agreement for lighting its streets, we shall expect it to continue to pay to this company the rate as provided in the existing contract, if we are to continue the service.
          " Yours very truly,
     "NORTHERN WESTCHESTER LIGHTING
                         COMPANY,
          "By F. A. STRATTON, *President.*"

No direct answer was ever made. Thereafter the commodity was furnished as before, with certain authorized additional lights. Bills were presented and for several months were signed by the supervising committee and the finance committee of the board of trustees of the defendant, and drafts were ordered in payment thereof. But it is in evidence that at the meeting of October 4, 1910, two days before the date of this letter, a member of the said board reported for the committee on lighting that it had met the representatives of the lighting company and discussed the matter of a new lighting contract with the village; that the lighting company had presented a proposed contract, which the committee had carefully gone over; that there were several points in the

proposed contract which the committee could not recommend; and thereupon it was moved and carried that the corporation counsel be directed to apply to the Public Service Commission, Second District, to adjust the cost of electric lighting in the village of Ossining. And it appears thereupon the said application to the Public Service Commission was completed. The letter in question, that was dated, as I have said, prior to such action, was formally received by the said board as of October 18, 1910. The mere expectation of the plaintiff, thus conveyed to the board of trustees, that if it continued to furnish the light it would receive the contract price thereof, could not under the circumstances fasten a contract upon the defendant simply because the communication remained unanswered. Before the date of the letter, the plaintiff knew that the defendant had objected to making a new proposed contract because it embodied features which the committee could not approve, and thus the subject had been up for discussion without agreement. The plaintiff is not in the category of a private person who could cut off his services if his demands were not complied with. As was said in *Weld* v. *Gas & Electric Light Commissioners* (197 Mass. 557): " The respondent is a corporation, organized to exercise a public franchise of importance to the community in which it conducts its business. It is its duty to exercise this franchise for the benefit of the public, with a reasonable regard for the rights of individuals who desire to be served, and without discrimination between them. It cannot relieve itself from this duty so long as it retains its charter. It enjoys public rights in the streets, which are derived from the Commonwealth, through action of the board of aldermen under authority of the Legislature. It is a quasi public corporation, and as such it owes duties to the public. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650. *Coy* v. *Indianapolis Gas Co.*, 146 Ind. 655, 659. *Williams* v. *Mutual Gas Co.*, 52 Mich. 499, 501. *Shepard* v. *Milwaukee Gas Light Co.*, 6 Wis. 539. *Gas Light Co. of Baltimore* v. *Colliday*, 25 Md. 1." The relative duties and obligations were reasonable service at proper rates. (See *People ex rel. Kings County L. Co.* v. *Willcox*, 210 N. Y. 479; Pub. Serv. Comm. Law [Consol. Laws, chap. 48; Laws of 1910, chap. 480], § 65, subd. 1; *McEntee*

v. *Kingston Water Co.*, 165 N. Y. 27, 32.)   As to any future service, the defendant had adopted the policy of having the rates determined by the Public Service Commission.

The said audits in themselves were not tantamount to the contract asserted by the plaintiff, nor do they justify the implication that such a contract came into existence as a consequence.   The audits covered bills for four months only, and thereafter further audits were refused.   The charter requires that such a contract must be made by the village through its board of trustees.   (See Laws of 1910, chap. 667, § 190.)   Such audit was conclusive only as to the amount certified.   (*Nelson* v. *Mayor, etc.*, 131 N. Y. 16; *People ex rel. Smith* v. *Clarke*, 79 App. Div. 78, 81.)   If the entire claim had been audited, there would be some force in the contention that the *entire* claim was good, but, even then, nothing more.

There was, I think, an implied contract (*Harlem Gas Co.* v. *Mayor, etc.*, 33 N. Y. 309; Dillon Mun. Corp. [5th ed.] § 1338 and notes), and a recovery might be had as upon *quantum meruit.*   (*Rubin* v. *Cohen*, 129 App. Div. 395, citing *Shirk* v. *Brookfield*, 77 id. 295.)

The first counterclaim rests upon the allegation that the plaintiff failed to comply with the 6th paragraph of the franchise, that provides that the company, during the continuance thereof, would supply the village, free of charge, with light to the amount of $2,000 per annum at such place or places within the limits of the village as the board of trustees may appoint.   It appears, however, that no appointment was ever made by the board of trustees.   This was a condition precedent.   Moreover, it appears that the corporation, during the term of the contract and the time included within this action, had furnished lights at the corporation rooms and to various fire houses, and there is some proof that the defendant accepted these lights as free.

The second counterclaim rests upon the contention that the light furnished was not in accord with the contract.   The court found that the contract provided that as to each incandescent lamp the plaintiff would furnish a current of 100 watts; that such provision was never changed nor modified; that on January 1, 1909, the plaintiff began to supply to each lamp an electric current of only 32 watts and thereafter

so continued, but the court added to its findings: " This is so, but the light furnished gave equal and better light using less current because of improvements and new inventions." The obvious purpose of the provision was light of a certain illuminating power. That purpose was accomplished if such illuminating power was furnished. The counterclaim involves the contention that although the city received light of equal or better illuminating power than contemplated by the contract, the requirement of 100 watts compelled the corporation to furnish lights of more than thrice the illuminating power so contemplated. Watt is the unit of power. (Curtis Electricity, 39; *Peoria Waterworks Co.* v. *Peoria Ry. Co.*, 181 Fed. Rep. 990, 1001.) Mr. Beatty, an electrical expert, testifies that the expression meant the current; that it had no direct reference to the volume of illumination; that such requirement as of 1905 meant 25 candle power light, and he thought that such was the only light available for incandescent light service in 1905. Light depended upon the efficiency of the lamp; that a 100 watt incandescent lamp produced 25 candle power and that the present system of Tungsten lights in use in the village produced like candle power. The learned court refused to find that the substitution of the current was made without the knowledge or consent of the defendant. And there is proof that the substitution was known to the authorities found in the report of the chief inspector of the Public Service Commission, made in 1911 and brought to the official attention of the trustees in May of that year.

The third counterclaim rests upon an alleged discrimination in rates against the village in comparison with other towns and villages. The defendant's basis of comparison is some thirty municipalities, but it cannot be said that the defendant within the rule established that the conditions and circumstances in the cities adduced for comparison were similar to those that existed in the defendant. (See *New York Telephone Co.* v. *Siegel-Cooper Co.*, 137 App. Div. 158, 163; affd., 202 N. Y. 502.)

While the determination of the Public Service Commission is not retroactive, it may be that both parties will agree that the rate determined by it is a fair measure of compensation

for the services sued for in this action. A fair compromise might result from an agreement upon such rates for the current furnished. I am the more moved to the suggestion inasmuch as the defendant in its answer offered to audit the claim at such sum as it deemed reasonable and proper, although it is true that the offer was limited by the condition that any sum thus audited might be deducted from the counterclaim. It is but fair that the village should pay for a commodity furnished to it.

The seventh and eighth findings of fact are disapproved, the judgment is reversed and a new trial is granted, costs to abide the final award of costs, unless within 20 days the parties stipulate that the defendant will pay and the plaintiff will accept pay for the lights actually furnished other than free lights, at the rate heretofore determined by the Public Service Commission; in which event the judgment is modified so as to afford recovery in that sum, without costs to either party, and as so modified it is affirmed, without costs.

THOMAS, STAPLETON, RICH and BLACKMAR, JJ., concurred.

Seventh and eighth findings of fact disapproved; judgment reversed and new trial granted, costs to abide the final award of costs, unless within twenty days the parties stipulate that the defendant will pay and the plaintiff will accept pay for the lights actually furnished other than free lights, at the rate heretofore determined by the Public Service Commission; in which event the judgment is modified so as to afford recovery in that sum, without costs to either party, and as so modified it is affirmed, without costs. Order to be settled before the presiding justice.