NORTHERN WESTCHESTER LIGHTING COMPANY, Appellant, *v.* THE PRESIDENT AND TRUSTEES OF THE VILLAGE OF OSSINING, Respondent.

Second Department, January 14, 1927.

Gas and electricity — special franchise taxes of lighting company — company's franchise provided for furnishing free lighting to village up to $2,000 per year — later, for bookkeeping purposes, company asked for resolution whereby it would pay $2,000 to village and village would pay for all lighting — company did not have right under Tax Law, § 46 (now § 48), to set off payment made on franchise against special franchise taxes.

The plaintiff, a lighting company, received a franchise from the village of Ossining by the terms of which it agreed to furnish the village, free of charge, light to the amount of $2,000 per annum. Later the company "for convenience of bookkeeping" requested that the village accept $2,000 in cash from the company and that it pay the company for the light furnished to the village. Prior to that time the village had deducted from bills rendered monthly a sum equal to one-twelfth of $2,000. Under the circumstances, the plaintiff did not have the right under section 46 (now § 48) of the Tax Law to set off against its special franchise tax the amount it paid to the village under the franchise agreement; if the franchise agreement had provided for the payment of cash, the ruling would be otherwise.

A resolution of the village authorizing the company to pay $2,000 per year instead of having that amount used as a set off against bills rendered against the village did not constitute a new franchise or an amendment of the existing franchise, but amounted merely to a change in practice for the purpose of bookkeeping only. Furthermore, there was no consideration for any agreement by the trustees of the village to modify the existing franchise.

The village is not estopped or concluded by any practical construction of the resolution authorizing the payment by the company, for the receipts for payment were given without prejudice to the rights of the village.

APPEAL by the plaintiff, Northern Westchester Lighting Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 29th day of May, 1925, upon the report of an official referee appointed to hear and determine the whole issues.

*John J. Crennan,* for the appellant.

*Thomas G. Barnes* [*Frederick W. Stelle* with him on the brief], for the respondent.

Judgment unanimously affirmed, with costs, upon the opinion of Hon. ISAAC N. MILLS, official referee.

Present — KELLY, P. J., MANNING, YOUNG, KAPPER and LAZANSKY, JJ.

The following is the opinion of the official referee:

ISAAC N. MILLS, Official Referee. This action was referred to me as official referee to hear and determine, by an order of the Supreme Court, made on consent of the respective parties at a Special Term of said court, held at the county court house in the city of White Plains, on July 23, 1923, Mr. Justice MORSCHAUSER presiding.

Pursuant to the said order I held several hearings, at which the parties appeared before me by their respective attorneys and counsel, and submitted to me their evidence. Subsequently counsel submitted to me their respective briefs. After reading the stenographer's minutes of the evidence, and the briefs, and considering the matter, I have reached the following conclusions:

The action was brought by the plaintiff to recover the sum of $10,000, with interest thereon from January 1, 1920, as the balance due it for electric lighting furnished by it to defendant in the latter's municipal buildings and upon its streets, between September 1, 1918, and January 1, 1920. There is really no dispute between the parties as to the facts. The material ones are the following:

Defendant's board of trustees, on March 7, 1905, duly granted to the plaintiff's predecessor a fifty-year franchise for such lighting within said village, the same being duly accepted by plaintiff's predecessor, to whose rights and obligations plaintiff has succeeded. The franchise contained among the other provisions the following from clause 6: " The Company shall also, during the continuance of this franchise, supply the Village of Ossining, free of charge, with light to the amount of $2,000 per annum, at such place or places within the limits of the village as the Board of Trustees may appoint."

Pursuant to that provision the plaintiff for several years furnished to defendant free lighting in its municipal rooms and fire houses, which generally amounted in value to less than $2,000. In 1911 a controversy arose between the company and the village trustees as to the price being charged by the company to the village for other public lighting, that is, the defendant claimed that the plaintiff was charging it for such lighting at a higher rate than it was charging private consumers. Appeal was then made by the village to the Public Service Commission, with the result that the company was required to, and thereafter did, make its charges to the village at the same rate as to private consumers.

The contract between the company and the village for public lighting was for a five-year term, expiring October 6, 1910. Plaintiff's president, by letter of that date, notified defendant that it would expect to be paid for future lighting at the rates specified in that contract until a new one was made. An action was subsequently brought in the Supreme Court by the plaintiff against the defendant to recover for several years' service at that rate. In that action the plaintiff at the trial court recovered judgment upon that basis. Defendant appealed from the judgment to the Appellate Division, which reversed and ordered a new trial, unless the plaintiff should stipulate to accept for that past period the rates fixed by the Public Service Commission. That decision is reported at 179 Appellate Division, 135. I do not perceive that that decision or the opinion of that court thereon presents anything of importance to aid in the determination of the instant action, except perhaps the holding (179 App. Div. 139) that the payment of plaintiff's bills for four months after the receipt of the president's notice, at the rates charged therein, did not constitute the making of a new contract or a continuance of the old, or estop the defendant from questioning future bills upon its contention that plaintiff's charges were too high.

On April 1, 1913, defendant's board of trustees passed this resolution, viz.: " Mr. Royle moved that for the month of February and each month hereafter, the payment of all audited bills of the Northern Westchester Lighting Company, for street or room lighting be made by the clerk by payment of a sum equal to the total audited charges for the month for such street or room lighting, less $166.66, which is to be credited the village by reason of the franchise of the said company."

Apparently the plaintiff was not contented with that resolution; and by one of its representatives it prepared and submitted to one of the defendant's trustees, and asked the passage of, a resolution in this form, viz.:

" WHEREAS the Northern Westchester Lighting Company, for convenience in bookkeeping, has requested that the Village accept the sum of $2,000 per annum in cash, payable in monthly installments of $166.66 in lieu of the franchise provisions for $2,000 per annum of free lighting.

" *Resolved,* that the draft of $799.34 to the Northern Westchester Lighting Company for the lighting for the month of February be cancelled and a new draft drawn to the order of the Northern Westchester Lighting Company for the sum of $966.00 for February lighting, and that the same be delivered by the clerk upon receipt from the said Northern Westchester Lighting Company of its check for $166.66, and that hereafter the lighting bills be paid on a basis of the full amount audited and a monthly check of $166.66 be received from the Company on account of the franchise provisions."

That resolution, at the request of that representative, was adopted at the meeting of the board of trustees on the 15th of April, 1913. Thereafter the parties conformed their practice to the terms of the latter resolution. That is, plaintiff each month sent to defendant plaintiff's check for $166.66, being one-twelfth of the $2,000 of free lighting under said franchise, and the plaintiff sent to defendant its bill in full for all public lighting furnished by it to the village at the rate fixed by the Public Service Commission.

During all the period herein involved, section 46, now section 48, of the Tax Law was in force.* It provided in substance and effect that, from any franchise tax due from such a corporation as the plaintiff to a village, the corporation should have the right to deduct " any sum of money " paid by the corporation to the village " within the next preceding year, under any agreement therefor, * * * which payment was in the nature of a tax."

In October, 1915, plaintiff in paying its franchise tax to the defendant, which amounted to more than $2,000, deducted therefrom the aggregate of the payments of $166.66 monthly, which had been made by it to the defendant during that period. Defendant's collector gave plaintiff a receipt for its said payment, with this statement written therein, viz.: " Such payment is received, however, without prejudice to the rights of the Village of Ossining as they now or may hereafter appear, and likewise without prejudice to any action or proceeding now pending or undetermined or which may hereafter be instituted by said village."

That procedure was continued by both parties in the following

---

* See Tax Law of 1896, § 46, as added by Laws of 1899, chap. 712; Tax Law of 1909, § 48, as amd. by Laws of 1916, chap. 581, and Laws of 1917, chap. 39.— [REP.

years of 1916, 1917, 1918 and 1919. Hence the aggregate so retained for those years is the sum of $10,000, the same amount claimed by the plaintiff in its complaint herein. Defendant in its answer alleges the facts as to the said retentions by the plaintiff, both as constituting a defense as of payment, and also as a counterclaim.

The controversy between the parties herein, therefore, is this: Had the plaintiff the right to offset the $2,000 aggregate of its monthly payments of $166.66 against its special franchise tax in each of those years, which tax amounted each year to considerably more than $2,000?

After considering the evidence and the briefs of the learned counsel, I have reached the conclusion that it did not have that right. The grounds of my conclusion are the following:

I. It appears to be conceded by both counsel that if, instead of providing for the furnishing of free lighting " to the amount of $2,000 per annum," the franchise had provided for a payment by plaintiff to defendant of that amount of money each year, said section 48, or its predecessor section 46, would apply, and plaintiff would have been entitled to make the deductions it claims, but that although the franchise provided for a pecuniary maximum, still the value or amount of the free lighting so furnished could not be so deducted. This proposition appears to have been held in *Matter of Consolidated Telegraph & El. Subway Co.* (119 App. Div. 835).

Except for that decision I might perhaps by my own reasoning come to the opposite conclusion.

It was, however, expressly held in *Village of Saranac Lake* v. *Paul Smith's E. L. & P. & R. R. Co.* (183 App. Div. 620) that if the provision had been in terms for a payment in money, plaintiff would be entitled to deduct such payment from its franchise tax. The distinction between the holdings in the two cases seems to be quite a fine one, but nevertheless to be distinctly made.

II. If the said resolutions of April 1 and 15, 1913, constitute a new franchise or an amending of the then existing franchise, the plaintiff would have the right to make the said deductions.

III. The said resolutions did not have that effect.

The last one, that of April fifteenth, must be regarded as controlling. It was drawn by the plaintiff, and according to elementary rules of construction must be construed against it in any matter of reasonable doubt. It appears by its very preamble that it was not intended to amend the franchise, viz.: " Whereas the Northern Westchester Lighting Company, *for convenience in bookkeeping,* has requested " (italics ours).

The declared object was merely to permit the plaintiff to conduct the account according to its own system of bookkeeping. In other words, the preamble indicates that the change in practice was made merely as a method of giving to the defendant the free lighting to which it was entitled by the terms of the franchise. That lighting had come to exceed in amount the maximum of $2,000, and of course it was utterly immaterial to the defendant if the plaintiff preferred to meet that obligation by paying the $166.66 each month and rendering its fu 1 bill. That matter the preamble declared was merely one of bookkeeping — not at all one of substance. The fact that the plaintiff chose to give to the defendant a check for that sum instead of adopting the more natural course of crediting the defendant with it upon the monthly bills, did not alter the transaction, which was merely a giving to defendant of the free lighting which was its due under the franchire. Manifestly defendant's trustees could not otherwise have regarded it. Upon the other construction claimed by plaintiff, the trustees were giving up defendant's undoubted right to the free lighting to the amount of $2,000 a year, and recovering for the village nothing in return for it.

IV. There was no consideration for any agreement by defendant's trustees to so modify the franchise.

It is at least very doubtful whether any such consideration could be deduced from the transaction. If plaintiff's construction be adopted, the defendant was to go through the idle proceeding of in effect receiving from the plaintiff each month $166.66, and handing it right back to the plaintiff, when it had the right to receive that amount in lighting absolutely free from any return to the plaintiff by credit to it upon its franchise tax or otherwise. It is impossible to conclude that defendant's trustees intended any such result. Of course, if there had been an adequate consideration, and the trustees, acting within their statutory powers, had bargained for such an amendment to the franchise, defendant would be bound by their act; but I can perceive no such consideration, and in view of the said preamble, I perceive no such then present intent upon either side.

V. Defendant is not estopped or concluded by any practical construction of those resolutions in accordance with plaintiff's view.

This appears from its reservations in the tax receipts, and apparently would exist without them. This was in effect held by the Appellate Division in the prior litigation between these parties. (179 App. Div. 135, 139.)

My conclusion, therefore, is that upon the said controverted

question in this case the defendant is entitled to decision in its favor.

I understand that there is no other matter in dispute. If I am mistaken in this respect, counsel can advise me.

The defendant may within twenty days prepare and submit a proposed report in accordance with this memorandum; and either party may within the same time submit its proposed findings.